IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EMPLOYERS INSURANCE COMPANY OF WAUSAU,

                                                                                           OPINION AND ORDER

                 Plaintiff,

                                                                                           13-cv-709-bbc

    v.

R&Q REINSURANCE COMPANY,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Defendant R&Q Reinsurance Company provided reinsurance to plaintiff Employers Insurance Company of Wausau. The question in this case is the extent to which defendant has violated its reinsurance agreements with plaintiff by failing to reimburse plaintiff for claims it paid out for injuries covered by plaintiff's insurance policies. Subject matter jurisdiction is present because plaintiff is a citizen of Wisconsin, defendant is a citizen of Pennsylvania and plaintiff is seeking more than $75,000 in damages. 28 U.S.C. § 1332(a)(1) (federal district court may exercise jurisdiction when parties have diverse citizenship and the amount in controversy is greater than $75,000).

        Now before the court is plaintiff's motion for summary judgment in which plaintiff argues that defendant owes approximately $694,000 under the reinsurance agreements and approximately $37,000 in prejudgment interest. I agree with plaintiff on the only argument that it raises in its opening brief, which is that plaintiff was entitled to combine indemnity

1

and defense expenses in its billings to defendant. However, I cannot yet resolve other issues raised in later briefs. Accordingly, I will grant plaintiff's summary judgment motion in part and give defendant an opportunity to submit supplemental materials on two remaining questions: whether plaintiff has proven the extent to which it has exceeded the retention amounts identified in the reinsurance agreements and whether plaintiff has calculated prejudgment interest correctly.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

UNDISPUTED FACTS

At an unspecified time, plaintiff issued two umbrella liability insurance policies to the Marley Company under the numbers 0722-50-024941 and 0724-50-024941. Policy 0722 included the following language: "with respect to each occurrence the limit of liability . . . is the total limit of [plaintiff's] liability for damages, direct and consequential, *and defense expense* because of all personal injury . . . ." (emphasis added). Policy 0724 includes the same language but omits the phrase "and defense expense." Both policies include a duty to defend and a requirement for plaintiff to pay defense expenses.

With respect to these policies, defendant issued certificates of facultative reinsurance with the numbers FRC 03 75 76 (for the 0722 policy) and FRC 04 67 99 (for the 0724 policy) that included the following language:

> [Defendant] agrees to indemnify [plaintiff] against loss or damage which [plaintiff] is legally obligated to pay under [plaintiff]'s policy reinsured,

resulting from occurrences taking place during the period this Certificate is in effect, subject to the Reinsurance Accepted limits shown in the Declarations. The liability of [defendant] shall follow that of [plaintiff] and, except as otherwise specifically provided herein or designated as non-concurrent reinsurance in the Declarations, shall be subject in all respects to all the terms and conditions of [plaintiff]'s policy except such as may purport to create a direct obligation of [defendant] to the original insured. [Plaintiff] shall furnish [defendant] with a full copy of its policy and all endorsements thereto which in any manner affect this Certificate, and shall make available for inspection and place at the disposal of [defendant] at reasonable times any of its records relating to this Reinsurance of claims in connection therewith.

* * *

All claims involving this reinsurance, when settled by [plaintiff] shall be binding on [defendant], which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that [defendant]'s loss payment bears to [plaintiff]'s gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that [defendant]'s limit bears to [plaintiff]'s gross limit of liability with respect to business accepted on a contributing excess basis, its proportion of expenses, other than Company salaries and office expenses, incurred by [plaintiff] in the investigation and settlement of claims or suits, and with prior consent of [defendant] to trial court proceedings, its proportion of court costs and interest on any judgment or award. However, should [plaintiff]'s policy limit include expenses, [defendant]'s maximum limit of liability shall be as stated in Item 4, of the Declarations.

Payment of its proportion of loss and expense paid by [plaintiff], will be made by [defendant] to [plaintiff] promptly following receipt of proof of loss … .

After Marley was sued by individuals for injuries covered by the 0722 and 0724 policies (related to asbestos exposure), Marley sued plaintiff for a determination of its rights under those policies. On July 1, 2003, plaintiff entered into a settlement agreement with Marley in which plaintiff agreed to pay a calculated percentage of the injury claims until the limits of the policies were reached. Included in the settlement were costs for both indemnity and defense.

3

In July 2010, plaintiff began billing defendant under the facultative reinsurance certificates for defendant's share of payments plaintiff had made under the settlement agreement. Thus far, plaintiff has billed defendant approximately $700,000, which defendant has not paid.

OPINION

A. Indemnity and Defense Expenses under the 0724 Policy

The parties agree that defendant's 04 67 99 reinsurance certificate requires defendant to pay 5 percent of plaintiff's indemnity amount in excess of $5,000,000. However, the parties dispute whether the same calculation applies to the amount of the settlement related to defense expenses. Plaintiff says that it does; defendant says that it does not and that plaintiff should "calculate [its] proportion of defense expenses using the ratio terms provided in the reinsurance certificate." Dft.'s Br., dkt. #21, at 10. (Defendant does not deny that defense expenses may be calculated the same way as indemnity under the 0722 policy.)

Both parties cite what they call the "follow the settlements" clause in reinsurance certificates as supporting their positions:

> All claims involving this reinsurance, when settled by [plaintiff] shall be binding on [defendant], which shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that [defendant]'s loss payment bears to [plaintiff]'s gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that [defendant]'s limit bears to [plaintiff]'s gross limit of liability with respect to business accepted on a contributing excess basis, its proportion of expenses, other than Company salaries and office expenses, incurred by [plaintiff] in the investigation and settlement of claims or suits, and with prior consent of [defendant] to trial court proceedings, its proportion of court costs and interest on any judgment

or award.

Neither side articulates its argument clearly, but the issue seems to be whether defense expenses may qualify as a portion of the "settlement." If they do, then plaintiff is correct that defendant must pay 5 percent of both indemnity and defense expenses over $5,000,000. If defense expenses do not qualify as a portion of the settlement, then plaintiff must calculate defendant's contribution using the ratio described in the above provision.

In support of its argument, plaintiff says that the reinsurance certificate does not exclude defense expenses from the meaning of "settlement" and that such expenses should be included because they are covered by the policies at issue. In addition, plaintiff says that the "follow the settlements" clause requires the court to give deference to plaintiff's view of an appropriate settlement. A helpful summary of these clauses was provided recently in Arrowood Indemnity Co. v. Assurecare Corp., 11 CV 5206, 2012 WL 4340699 (N.D. Ill. Sept. 19, 2012):

> The purpose of follow-the-settlements clauses in reinsurance agreements is to bind a reinsurer to accept the cedent's good faith decisions on all things concerning the underlying insurance terms and claims against the underlying insured: coverage, tactics, lawsuits, compromise, resistance or capitulation. To allow the reinsurer to question the underlying settlement would be to relitigate the underlying claim all over again; there would be little incentive for the reinsured to settle its claims with policyholders. Therefore, once the reinsured enters into a settlement agreement with a policyholder, a follow-the-settlements provision requires the reinsurer to cover settlements made by the reinsured, as long as they are not fraudulent, collusive or made in bad faith.

Id. at *3 (internal quotations, citations and alterations omitted).

Although defendant devotes six pages of its brief to this issue, it never explains why

it believes that defense expenses may not qualify as part of the settlement and it does not deny that the 0724 policy provides coverage for defense expenses. Instead, it cites various cases for the proposition that the "follow-the-settlements doctrine does not bind a reinsurer like R&Q Re to make payments outside the scope of its contractual obligations." Dft.'s Br., dkt. #7-8. However, that argument is meaningless unless defendant shows first that plaintiff is asking defendant "to make payments outside the scope of its contractual obligations." Although defendant repeats its position that plaintiff should submit bills "in accord with the terms of the R&Q Re reinsurance certificates," id. at 8, it does not explain how plaintiff's position is inconsistent with the certificates.

It may be that defendant believes that defense expenses should not be included in the settlement because, unlike the 0722 policy, the 0724 policy does not use the phrase "defense expenses" when defining the total limits of liability. However, plaintiff reads these provisions to mean simply that, under the 0724 policy, defense expenses are subsumed within the total limit to be paid, but, under the 0722 policy, defense expenses may be *added* to the limit of liability. In other words, the provision does not affect the type of expenses that are covered, only the amount. This is a plausible interpretation and defendant does not offer a contrary interpretation, so I see no reason to question it. Further, because defendant does not argue that the settlement amount exceeded the policy limit, I am granting plaintiff's motion for summary judgment on this issue.

6

B. Other Issues

Defendant raises three issues in its opposition brief that plaintiff did not anticipate in its opening brief. First, defendant says that plaintiff "has not submitted proper evidence regarding payment of its retention obligations." Dft.'s Br., dkt. #21, at 12. Second, defendant says that plaintiff "incorrectly calculates its retention obligations under the FRC 04 67 99 facultative reinsurance certificate." Id. at 13. Third, plaintiff raises a number of arguments about the calculation of prejudgment interest.

With respect to defendant's first argument, the parties agree that defendant's obligations under the reinsurance certificates are not triggered until plaintiff has paid out a certain amount of money, which the parties call the retention amount. That amount is $10,000,000 with respect to the 0722 policy and the 03 75 76 reinsurance certificate and $5,000,000 with respect to the 0724 policy and the 04 67 99 reinsurance certificate.

In its brief, defendant says that plaintiff does not "provide any support" to show that it has paid out more than $5,000,000 under the 0724 policy or $10,000,000 under the 0722 policy. In its reply brief, plaintiff cites as proof the bills that it submitted to defendant, each of which shows the amount that plaintiff had paid out at the time. Dkt. #18-8 through 18-29.

Because plaintiff did not raise this issue in its opening brief and defendant has not an opportunity to respond to plaintiff's argument, I cannot grant summary judgment on this issue. Instead, I will give defendant an opportunity to show why plaintiff's evidence is inadmissible or insufficient to show that plaintiff has exceeded the retention amounts with

7

respect to both reinsurance certificates.

Defendant's second argument is similar to the one in the previous section. Defendant says that, under the 04 67 99 reinsurance certificate, its obligations are not triggered until plaintiff's "loss" exceeds $5,000,000 and that plaintiff has incorrectly calculated its loss as including defense expenses. Defendant cites several provisions in the 0724 policy, but, again, does not explain why any of those provisions prohibited plaintiff from including defense expenses as part of its retention amount. Accordingly, even without considering plaintiff's reply brief, I see no reason to defer a ruling on this issue and I will grant summary judgment to plaintiff.

Defendant's third set of arguments is related to prejudgment interest. Most of these are contingent on defendant's previous arguments about defense expenses, so I need not consider those. Defendants' other two arguments are that (1) plaintiff should not have calculated prejudgment interest from the date of a particular billing because that gave defendant no time to review the bill; and (2) plaintiff has provided inconsistent evidence regarding the dates that it billed defendant, so defendant cannot determine what the proper calculation of interest should be. In its reply brief, plaintiff agrees with defendant in part and has submitted a revised calculation in an attempt to address defendant's concerns. Because defendant has not had an opportunity to respond to the revised calculation, I will allow defendant to do so now.

ORDER

IT IS ORDERED that plaintiff Employers Insurance Company of Wausau's motion for summary judgment, dkt. #25, is GRANTED with respect to the issue whether the 03 75 76 and 04 67 99 reinsurance certificates allowed plaintiff to combine indemnity and defense expenses in its billings to defendant R & Q Reinsurance Company.  Defendant may have until May 30, 2014 to submit supplemental materials on the questions whether plaintiff has proven the extent to which it has exceeded the retention amounts and whether plaintiff has calculated prejudgment interest correctly.

Entered this 16th day of May, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge